IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRUCE BAYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No.  12-743-CJP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Bruce Bayer is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

**Procedural History**

Plaintiff applied for benefits in August, 2009, alleging disability beginning on October 8, 2007.  (Tr. 157).   The application was denied initially and on reconsideration.   After holding a hearing, ALJ George Gaffaney denied the application for benefits on March 22, 2011.   (Tr. 11-20).   Plaintiff's request for review was denied by the Appeals Council, and the March 22, 2011, decision became the final agency decision.   (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 7.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in weighing the medical opinions, including that of treating doctor Stanley Vriezelaar, M.D.

2. The ALJ did not correctly evaluate the credibility of plaintiff's complaints of pain.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, **20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Bayer was, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Gaffaney followed the five-step analytical framework described above. He determined that Mr. Bayer had not been engaged in substantial gainful activity since the alleged onset date, and that he was insured for DIB through December 31, 2013. The ALJ found that plaintiff had a severe impairment of degenerative disc disease of the cervical spine, status post fusion.

The ALJ further determined that plaintiff's impairment does not meet or equal a listed

impairment.  The ALJ found that Mr. Bayer had the residual functional capacity to perform a limited range of work at the light exertional level.  A vocational expert ("VE") testified that he could not perform his past work as a sheet metal riveter.  However, he could perform other jobs which exist in significant numbers in the national and local economy.  The ALJ accepted this testimony, and found that he is not disabled.  (Tr. 11-20).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff.

**1.     Agency Forms**

Plaintiff was born in 1959, and was almost 50 years old on the alleged onset date.  (Tr. 207).  He was 5' 9" and weighed 181 pounds.  (Tr. 217).  He alleged that he was unable to work because of cervical fusion surgery with residual problems, ulnar nerve surgery, and pain in his wrists, elbows and left shoulder.  (Tr. 218).

Plaintiff had worked as a sheet metal assembler and riveter, doing production line assembly for Boeing Aircraft from 1986 to October, 2007.  (Tr. 210).  He had a high school education and training in Aviation Maintenance Technology.  (Tr. 228).

Mr. Bayer submitted a report in September, 2009, in which he said that he tried to do some household chores such as laundry and yard work.  He had to go slowly and take breaks.  He also ran errands and visited with friends and his parents.  He sometimes attended his daughters' college volleyball games or went to a sports bar to watch football.  He was no longer able to play sports himself.  (Tr. 246-254).

**2.     Evidentiary Hearing**

Plaintiff was represented by counsel at the evidentiary hearing on February 10, 2011. (Tr. 26).

Mr. Bayer testified that he lived with his wife and two college-aged daughters. (Tr. 33). He last worked at Boeing on October 8, 2007. He testified that he was unable to work at the time of the hearing because of pain from his neck down to his middle back. He had pain and a clicking sensation when he moved his head up and down or side to side. (Tr. 35). Sitting up was uncomfortable for him. At home, he put pillows under his arms and behind his head. He was uncomfortable if the weight of his head was not supported. (Tr. 36). Holding his arms out in front of him for one minute would cause him pain in his upper back or lower neck. (Tr. 38). He could lift and carry maybe 15 pounds (Tr. 39-40).

Mr. Bayer took Oxycodone for pain. It made him sleepy. (Tr. 37).

Plaintiff testified that he did laundry, but he had to go slowly and be careful with reaching. (Tr. 40). He read the newspaper and used his laptop while sitting on the couch. His finger dexterity was not as good as it had been. He had trouble with fine movements like buttoning collar buttons. (Tr. 41). He did not do dishes because of the reaching. (Tr. 46).

Mr. Bayer described his pain as moderate. Sometimes pain interfered with his ability to concentrate. (Tr. 42-43). He said his depression was under control. (Tr. 48). The problems that he had with his left shoulder, wrists and elbows were cleared up. (Tr. 48).

He had a pending Worker's Compensation claim for his shoulder. He had settled a claim for his neck. (Tr. 49-50).

A vocational expert also testified. The ALJ asked him to assume a person who could lift 20 pounds occasionally and 10 pounds frequently, stand and sit for 6 out of 8 hours each, limited to no climbing ladders, only occasional overhead reaching, and only occasional exposure to

vibrations, heights, moving parts and extremes of temperature.   The VE testified that this person could not do plaintiff's past work.   However, he could do other jobs which existed in significant numbers such as mail clerk, cashier and fast food worker.   (Tr. 52-53).

The ALJ then posed a second hypothetical question which assumed a person who could do sedentary work and was able to stand for 2 hours and sit for 6 hours, with all other assumptions the same as in the first question.   The VE identified some jobs that could be done by this person up to the age of 50.   (Tr. 53-54).   If the person were further limited to only occasional handling and reaching, he could not do the sedentary jobs.   (Tr. 55-56).

### 3.   Medical Records

In June, 2006, Mr. Bayer underwent cervical spinal fusion at C5-6 and C6-7.   This surgery was done by Dr. Daniel Riew.   (Tr. 612-613).   In September, 2007, Dr. Riew prescribed physical therapy for cervical spondylosis.   (Tr. 472).   After eighteen sessions of physical therapy, Mr. Bayer was discharged to a home exercise program in November, 2007.   The physical therapist's notes indicate that he had plateaued, and was still complaining of neck pain and radicular symptoms into his left arm.   On exam, he had limited range of motion of the neck with pain on palpation and trigger point formation in his left scapular muscles.   Cervical compression testing did not reproduce radicular symptoms.   (Tr. 459-460).

Mr. Bayer began seeing Dr. Daniel Schwarze in April, 2008, for bilateral shoulder pain, worse on the left.   MRI testing showed tendinosis of the rotator cuff on the left.   Dr. Schwarze did arthroscopic surgery.   In February, 2009, eight months after surgery, he was doing very well. Dr. Schwarze noted that he had had no symptoms.   (Tr. 508-513).

Plaintiff's primary care physician was Dr. Stanley Vriezelaar.   In January, 2008, Dr. Vriezelaar noted that plaintiff was seeing a pain management doctor for neck and shoulder pain.

The assessment was cervical spondylosis. (Tr. 539). The next month, he was improved after a nerve block. He was no longer taking pain medication, but he was still limited in his ability to lift and to move his neck. The doctor agreed that plaintiff could try to return to work with restrictions. The exact restrictions are not set forth in the doctor's note. (Tr. 541).

In April, 2008, plaintiff reported to Dr. Vriezelaar that there was no available position at Boeing within his restrictions, so he had not returned to work. The doctor thought his restrictions were reasonable and that he should wait for an inspection position to open up. (Tr. 542).

In May, 2008, Mr. Bayer told Dr. Vriezelaar that his depression symptoms were well-controlled on medication. (Tr. 543). Mr. Bayer continued to see Dr. Vriezelaar throughout 2008. The doctor continued to document that his depression was controlled and that he complained of chronic neck and shoulder pain. (Tr. 544-547). Dr. Vriezelaar noted that he turned his entire body instead of just his neck because of pain. (Tr. 546).

In February, 2009, Mr. Bayer told Dr. Vriezelaar that the pain in his left upper back had gradually increased, and he wanted some pain medication. He had a limited range of motion in his cervical spine and turned his entire chest in order to look over his shoulder. (Tr. 548). In July, 2009, his pain was adequately controlled on hydrocodone and acetaminophen.[2] He was doing home exercise as well. (Tr. 549). Dr. Vriezelaar saw plaintiff on November 30, 2009. Plaintiff reported that his pain was adequately controlled but he was limited in his daily activities. He turned stiffly, guarding his neck motion. (Tr. 595).

Plaintiff saw Dr. Vriezelaar twice in 2010. On April 28, 2010, plaintiff again reported that his pain was adequately controlled but he was limited in his daily activities. He was using a home Jacuzzi, but occasionally took Vicodin. On exam, he had normal memory, orientation , affect and

---

[2] This combination of drugs is sold under several brand names, including Norco, Lortab and Vicodin. See, http://www.drugs.com/hydrocodone.html, accessed on December 14, 2012.

mood.  The doctor noted that he "does turn stiffly guarding his neck motion."  The impression was chronic neck pain, stable, with limitation of activities.  The doctor recommended nonpharmacologic measures for pain control, including heat and use of his Jacuzzi.  He prescribed Vicodin to take as needed.  He noted that plaintiff's depression was in remission on medication.  (Tr. 596). In October, 2010, he was much the same, except that he reported some tingling in his left fourth and fifth fingers.  His pinch, grip and muscle strength in the hands were symmetric.  (Tr. 604).

Dr. Vriezelaar completed a report of plaintiff's RFC on September 6, 2010.  (Tr. 599-603).  The doctor had begun treating plaintiff in October, 2004.  His diagnosis was degeneration of cervical disc.  He wrote that plaintiff had symptoms of neck, upper back and arm pain.  Dr. Vriezelaar opined that Mr. Bayer could sit for a total of 6 hours a day and stand/walk for a total of less than 2 hours, and that he needed a job in which he could shift positions at will.  He opined that Mr. Bayer could lift a maximum of less than 10 pounds, and could only rarely lift.  He said that plaintiff could only rarely turn his head, look up or down, or hold his head in a static position.  Dr. Vriezelaar did not rate his ability to do postural activities.  He indicated that Mr. Bayer had significant limitations in reaching, handling and fingering, including limiting reaching to only one percent of the work day.

**4.    Evaluations for Worker's Compensation Claims**

Dr. Michael Nogalski examined plaintiff on July 14, 2008.  This exam was in connection with a Worker's Compensation claim involving his shoulders.  On exam, Dr. Nogalski noted that Mr. Bayer had slight limitation of flexion and extension of his neck. He was not able to touch his chin to his chest.  He could turn his head 45 degrees in both directions.  Dr. Nogalski opined that Mr. Bayer was not at maximum medical improvement with respect to his left shoulder surgery.

He concluded that he was unable to "identify any specific permanency in either shoulder with respect to his work activities." (Tr. 310-314).

Dr. Poetz examined Mr. Bayer at his attorney's request on January 21, 2010. (Tr. 586-594). On exam, he had crepitus in both shoulders with range of motion, and range of motion was somewhat limited. Muscle strength against resistance with abduction of the shoulders was 3/5. Range of motion of the cervical spine was limited, with crepitus and cervical myospasms on range of motion. Grip strength was reduced. There were no positive findings with respect to plaintiff's lumbar or thoracic spine. Dr. Poetz made a number of recommendations, including that plaintiff avoid overhead use of his upper extremities and avoid excessive and repetitive use of his upper extremities. He concluded that Mr. Bayer was permanently and totally disabled.

**5.**   **RFC Evaluations by State Agency Consultants**

A state agency physician evaluated plaintiff's physical RFC in October, 2009, and concluded he could do work at the light exertional level, limited to no climbing of ladders, ropes or scaffolds and only occasional reaching in all directions, including overhead. This assessment was based on a review of the records, and not an examination. The state agency physician noted that, when Dr. Vriezelaar examined plaintiff on February 2, 2009, he found that plaintiff had full strength, no tenderness around the shoulder, negative impingement and Speeds' maneuver, and full symmetrical range of motion. (Tr. 568-575).[3]

A second state agency physician reviewed medical records and agreed with this assessment on January 19, 2010. (Tr. 581-583).

**Analysis**

Plaintiff argues that the ALJ erred in weighing the medical opinions, including the

---

[3] The February 2, 2009, examination was actually conducted by Dr. Daniel Schwarze, and not by Dr. Vriezelaar.

opinions expressed by Dr. Vriezelaar.

Dr. Vriezelaar was a treating doctor.   Social security regulations refer to a treating doctor as a "treating source."   With regard to the assessment of treating source opinions, 20 C.F.R. §404.1527(d)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [emphasis added]

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R. §404.1527(a)(2).   A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record.   **Clifford v. Apfel, 227 F.3d 863 (7th Cir. 2000); Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001).**

If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, he is required to evaluate the treating doctor's opinion and determine what weight to give it considering the factors set forth in 20 C.F.R. §404.1527(d).   An ALJ must give "good reasons" for discounting a treating doctor's medical opinion; if the opinion does not merit controlling weight, the ALJ must consider the "checklist of factors" set forth in §404.1527(d).   **Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010)**, citing **Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010).**

ALJ Gaffaney discussed the various medical opinions at Tr. 16-18.   In general, he gave little weight to any opinion that favored Mr. Bayer's application.   His reasons for weighing the medical opinions are legally insufficient and internally inconsistent.

The ALJ gave "little weight" to the opinion of the only treating doctor to express an opinion regarding RFC.   While recognizing that Dr. Vriezelaar had treated plaintiff for years, he discounted his assessment because it was "inconsistent with the medical evidence overall" and it relied on Mr. Bayer's subjective reports.   The ALJ said that his opinion was not consistent with those of other doctors, and was not consistent with his own finding that pinch, grip and muscle strength in the hands was symmetric.   (Tr. 18).

An ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax."   ***Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)**; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).   However, where the primary piece of evidence relied on by the ALJ does not support the proposition for which it is cited, the ALJ has failed to build the requisite "logical bridge" from evidence to conclusion.   *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

The ALJ's reliance on the fact that Dr. Vriezelaar found symmetric pinch, grip and muscle strength in the hands is misplaced.   That finding is not inconsistent with Dr. Vriezelaar's opinion that plaintiff could not reach for more than one percent of the work day, and could not stand/walk for more than two hours.   The Commissioner identifies other inconsistencies he perceives between Dr. Vriezelaar's opinion and his treatment notes, but no other inconsistencies were identified by the ALJ, and this Court's review is restricted to the reasons expressed by the ALJ. **See,** *McClesky v. Astrue*, **606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its**

-11-

decision...."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).   In addition, the ALJ discounted Dr. Vriezelaar's opinion because it was inconsistent with other doctors, but it was generally consistent with Dr. Poetz's opinion in that Dr. Poetz recommended that that plaintiff avoid overhead use of his upper extremities and avoid excessive and repetitive use of his upper extremities.

The ALJ's handling of Drs. Poetz and Nogalski was faulty as well.   The ALJ said that he gave "some weight" to Dr. Nogalski's opinion and that his findings were consistent with the ALJ's own RFC assessment.   (Tr. 16, 18).   However, he gave "little weight" to the assessment of Dr. Poetz.   (Tr. 17).   Although both doctors examined plaintiff for his Worker's Compensation claims, the ALJ relied on that circumstance to discount Dr. Poetz's opinion, but not Dr. Nogalski's.   The ALJ also cited the fact that Dr. Poetz gave his assessment at the request of plaintiff's attorney.   The Seventh Circuit has held that this is not a valid reason to discount a doctor's opinion.   *Punzio v. Astrue*, 630 F.3d 704, 712-713 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 560-561 (7th Cir. 2009).   Further, the ALJ ignored the fact that Dr. Nogalski performed his examination at the behest of the worker's compensation insurance carrier and/or the attorney who was defending against the claim.   See, Tr. 314.

With regard to plaintiff's second point, the Court agrees that the ALJ did not properly evaluate his complaints of pain.   First, he said that plaintiff's complaints of pain were not supported by the medical evidence.   However, "If the medical record does not corroborate the level of pain reported by the claimant, the ALJ must develop the record and seek information about the severity of the pain and its effects on the applicant."   *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).   Here, the main "fact" relied upon by the ALJ was his perception that Mr. Bayer's daily activities were inconsistent with his alleged level of pain.   The ALJ recognized that plaintiff

was not as active as he once was, but noted that he was able to attend to his personal care, move about the community without an assistive device, drive, run errands and attend his daughters' volleyball games. However, the ability to do these activities does not mean that Mr. Bayer is able to hold down a full-time job. See, *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), and cases cited therein.

This Court concludes that ALJ failed to build the requisite "logical bridge" from the evidence to his conclusions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2010), citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Bayer is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Bruce Bayer's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:** December 14, 2012.

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE**
